UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CURTIS WEBER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:16 CV 478 ACL |
| ) | |
| NANCY A. BERRYHILL,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

Plaintiff Curtis Weber brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.

An Administrative Law Judge ("ALJ") found that, despite Weber's severe impairments, he was not disabled as he had the residual functional capacity ("RFC") to perform jobs that exist in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).  A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security.   Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

## I. Procedural History

Weber filed his application for SSI on April 11, 2013. (Tr. 150-55.) He alleged that he became disabled on March 18, 2008, due to post-traumatic stress disorder ("PTSD"), back problems, knee problems, depression, and anxiety. (Tr. 170.) Weber's claims were denied initially. (Tr. 85.) Following an administrative hearing, Weber's claims were denied in a written opinion by an ALJ, dated September 12, 2014. (Tr. 10-21.) Weber then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA), which was denied on February 5, 2016. (Tr. 5, 1-4.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In the instant action, Weber claims that the ALJ "erred in failing to properly support the RFC determination as required by SSR 96-8p and failing to properly develop the record regarding Weber's mental limitations." (Doc. 15 at p. 7.)

## II. The ALJ's Determination

The ALJ found that Weber had not engaged in substantial gainful activity since his application date of April 11, 2013. (Tr. 12.)

In addition, the ALJ concluded that Weber had the following severe impairments: spine and bilateral hip dysfunction; major depressive disorder; anxiety disorder; and PTSD. *Id.* The ALJ found that Weber did not have an impairment or combination of impairments that meets or equals in severity the requirements of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13.)

As to Weber's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to

> perform light work as defined in 416.967(b) in that he can lift 20 pounds occasionally and lift/carry 10 pounds frequently; can stand and/or walk 6 hours out of an 8 hour workday; can sit 6 hours out of an 8 hour workday except he should avoid concentrated exposure to hazards, such as unprotected heights and being around dangerous, moving machinery.  He can never climb ropes, ladders, or scaffolds.  He can no more than occasionally climb on ramps and stairs, balance, stoop, kneel, crouch, or crawl.  He can understand, remember, and carry out simple instructions, consistent with unskilled work, in a job where there are no strict production quotas and the individual would not be subject to the demands of fast-paced production work.  In other words, work is by the shift and not by the hour.  He can perform only simple decision-making related to basic work functions.  He can tolerate only minor, infrequent changes in the workplace.  He can have occasional contact with co-workers and supervisors but no contact with the general public.

(Tr. 15.)

The ALJ found that Weber's allegations regarding his limitations were not entirely credible.  (Tr. 16.)  In determining Weber's RFC, the ALJ indicated that he was assigning "partial weight" to the opinion of consultative psychologist Jonathon D. Rosenboom; "little weight" to the opinion of state agency evaluator Mark Altomari, Ph.D.; and "significant weight" to the opinion of examining physician Jeff Semeyn, D.O.  (Tr. 17-19.)

The ALJ further found that Weber is unable to perform any past relevant work.  (Tr. 19.) The ALJ noted that a vocational expert testified that Weber could perform jobs existing in significant numbers in the national economy, such as small products assembler I, garment sorter, and folding machine operator.  (Tr. 20.)  The ALJ therefore concluded that Weber has not been under a disability, as defined in the Social Security Act, since April 11, 2013, the date the application was filed.  (Tr. 21.)

The ALJ's final decision reads as follows:

> Based on the application for supplemental security income filed on April 11, 2013, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

*Id.*

### III.   Applicable Law

### III.A.  Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).  Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion.  *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).  This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings."  *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted).  "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis."  *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1.   The credibility findings made by the ALJ.

2.   The plaintiff's vocational factors.

3.   The medical evidence from treating and consulting physicians.

4.   The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5.   Any corroboration by third parties of the plaintiff's impairments.

> 6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted). *See also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

**III.B.  Determination of Disability**

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any other kind of substantial gainful work which exists … in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.  20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).  First, the Commissioner will consider a claimant's work activity.  If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.  20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities."  *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003).  "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 416.921(b).  These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.  *Id.* § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S.Ct. 2287, 2291 (1987).  "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work."  *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the

medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir.

2000).   The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.   *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v).   If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled.   If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.   20 C.F.R. §416.920(a)(4)(v).   At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant.   *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a.   The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists.   *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1).   If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2).   The Commissioner must then rate the degree of functional loss resulting from the impairments in four areas deemed essential to work:   activities of daily living, social functioning, concentration, and persistence or pace.   *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3).   Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities.   *See id.*   Next, the Commissioner must determine the severity of the impairment based on those ratings.   *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c).   If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder.   *See* 20 C.F.R. §§

404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

### IV. Discussion

As noted above, Weber argues that the ALJ erred in determining his mental RFC.[2] Specifically, Weber claims that the ALJ improperly weighed the medical opinion evidence, and failed to properly develop the record regarding Weber's mental impairments.

Residual functional capacity is defined as that which a person remains able to do despite his limitations. 20 C.F.R. § 404.1545(a), *Lauer v. Apfel,* 245 F.3d 700, 703 (8th Cir. 2001). The ALJ must assess a claimant's RFC based upon all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of his symptoms and limitations. 20 C.F.R. § 404.1545(a); *Anderson v. Shalala,* 51 F.3d 777, 779 (8th Cir. 1995); *Goff v. Barnhart,* 421 F.3d 785, 793 (8th Cir. 2005). A claimant's RFC is a medical question, and there must be some medical evidence, along with other relevant, credible evidence in the record, to support the ALJ's RFC determination. *Id.; Hutsell v. Massanari,* 259 F.3d 707, 711-12 (8th Cir. 2001); *Lauer,* 245 F.3d at 703-04; *McKinney v. Apfel,* 228 F.3d 860, 863 (8th Cir. 2000). An "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8p, 1996 WL 374184, at *7. Although an ALJ must determine the claimant's RFC based upon all

---

[2] Because Weber does not challenge the ALJ's determination as to his physical RFC, the undersigned will not discuss Weber's physical conditions.

relevant evidence, the ALJ is not required to produce evidence and affirmatively prove that a claimant is able to perform certain functions. *Pearsall,* 274 F.3d at 1217 (8th Cir. 2001); *McKinney,* 228 F.3d at 863. The claimant bears the burden of establishing his RFC. *Goff,* 421 F.3d at 790.

The ALJ summarized the objective medical evidence regarding Weber's mental impairments as follows:

> Turning to the longitudinal medical record, the undersigned finds that it lacks objective findings to support the degree of the claimant's limitations. The claimant has mental impairments, variously diagnosed as major depressive disorder, anxiety disorder, and post-traumatic stress disorder. However, the record does not reflect that he has ever participated in treatment for his mental symptoms. The claimant had one recent psychiatric hospital admission, but he testified that this was because he smoked K2 when he could not find marijuana and it caused him to have seizures. Subsequent evidence reflects that he is doing well after the treatment he received while in the hospital.

(Tr. 17.)

As to the opinion evidence, the ALJ first noted that Weber saw Dr. Rosenboom on October 15, 2012, for a psychological consultative examination at the request of the state agency. (Tr. 229-32.) Weber reported experiencing "terrible nightmares" associated with a tree falling on his mobile home in 2008. (Tr. 229.) He stated that he hears noises at night and wakes up trembling and in cold sweats between two and twenty nights a month. *Id.* Weber denied current suicidal thoughts or plans, but reported a history of suicidal thoughts without plans or attempts. (Tr. 230.) Weber had sought no mental health treatment since his symptoms began in 2008, and had never taken psychotropic medications. *Id.* He denied recent use of alcohol or illegal drugs but admitted that he was arrested once in 1992 for being intoxicated. *Id.* Weber reported that he last worked in 2007, and that he had not worked since that time because he did not have transportation and because of "the economy." (Tr. 230-31.) Weber lived in a travel trailer without water,

electricity, or heat. (Tr. 231.) He reported spending his days "gathering up firewood for when it gets cold, I build a fire in the fire pit." *Id.* Upon mental status examination, Weber's mood appeared anxious, he displayed a sad and worried facial expression, his personal hygiene and grooming were moderately below average as he was malodorous and his clothing was dirty, his gross motor activity was normal, his speech was halting with anxiety at first but improved, he was an articulate speaker, he developed a good working relationship with the examiner, he was an adequate historian and reliable informant, was alert and attentive, his memory was not impaired, and he denied visual hallucinations, but reported that he heard "people arguing in [his] head." (Tr. 231-32.) Dr. Rosenboom diagnosed Weber with PTSD, mild; and a GAF score of 52.[3] (Tr. 232.) Dr. Rosemboom expressed the opinion "within a reasonable degree of psychological certainty, that the claimant does not have a mental disability that prevents him from engaging in that employment or gainful activity for which his/her age, training, experience or education will fit him." *Id.* The ALJ stated that she was assigning "partial weight" to the opinion of Dr. Rosenboom because the opinion and GAF score were "generally consistent with the overall evidence." (Tr. 17.)

The ALJ assigned "significant weight" to the opinion of examining physician, Jeff Semeyn, D.O. (Tr. 19.) Dr. Semeyn evaluated Weber in September 2012 and found that he did not have a mental or physical disability that prevented him from engaging in employment or gainful activity. (Tr. 19, 234.) The ALJ acknowledged that the ultimate issue of disability is a determination that is the exclusive province of the Commissioner, yet assigned significant weight

---

[3] A GAF score of 51 to 60 denotes "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *See American Psychiatric Ass'n., Diagnostic and Statistical Manual of Mental Disorders* 34 (Text Revision 4th ed. 2000) ("*DSM IV–TR* ").

to Dr. Semeyn's opinion, because she found it was consistent with the evidence.  (Tr. 19.)

The ALJ also discussed the opinion of non-examining state agency evaluator, Mark Altomari, Ph.D.  (Tr. 17.)  On July 24, 2013, Dr. Altomari found that Weber had only mild limitations in his activities of daily living, ability to maintain social functioning, and ability to maintain concentration, persistence, or pace.  (Tr. 78.)  He expressed the opinion that Weber's mental impairments were non-severe.  (Tr. 79.)  The ALJ stated that she was giving this opinion "little weight" because additional evidence submitted at the hearing level showed that Weber was more limited than assessed by Dr. Altomari.  (Tr. 17.)

"'It is the ALJ's function to resolve conflicts among the various treating and examining physicians."  *Tindell v. Barnhart,* 444 F.3d 1002, 1005 (8th Cir. 2006) (quoting *Vandenboom v. Barnhart,* 421 F.3d 745, 749–50 (8th Cir. 2005) (internal marks omitted)).  The opinion of a treating physician will be given "controlling weight" only if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record."  *Prosch v. Apfel,* 201 F.3d 1010, 1012–13 (8th Cir. 2000).  The record, though, should be "evaluated as a whole."  *Id.* at 1013 (quoting *Bentley v. Shalala,* 52 F.3d 784, 785–86 (8th Cir. 1997)).

Weber first contends the ALJ's weighing of these opinions was erroneous because she failed to indicate how the opinions supported her RFC determination.  Weber's argument lacks merit.  The ALJ was not required to rely on one doctor's opinion entirely or choose between the opinions.  *Martise v. Astrue,* 641 F .3d 909, 927 (8th Cir. 2011).  Further, the ALJ provided a detailed summary of the medical evidence, and explained how the evidence as a whole supported her determination.

In addition to the consultative examinations summarized above, the ALJ discussed Weber's May 2014 hospitalization. (Tr. 18.) The ALJ noted that, although Weber was hospitalized for depression and suicidal ideation, he testified at the administrative hearing "that the actual cause for his hospitalization was seizures he experienced after smoking K2." (Tr. 18, 39.) The record supports this finding.

Weber presented to the Phelps County Regional Medical Center ("PCRMC") on May 3, 2014, with complaints of "having this self-destructive behavior and argument in my head," with "suicidal thoughts." (Tr. 294.) Weber reported that he smoked synthetic marijuana the prior six days and had a seizure. *Id.* He also complained of flashbacks and nightmares related to the tree falling on his trailer in 2008. *Id.* Weber indicated that he had experienced psychological symptoms for almost twenty years, but had never sought treatment. (Tr. 295.) He had a history of abusing crack, cocaine, heroin, and methamphetamines, but his drug of choice has always been marijuana. (Tr. 296.) He reported that he recently starting doing K2, which gives him seizures, but he continued to do the drug despite the seizures. *Id.* Upon mental status examination, Weber appeared older than his stated age, was disheveled, his eye contact was avoidant, he appeared to have psychomotor retardation, his reported mood was "sad," his affect was depressed, his thought process was preoccupied with thoughts of being hurt as a child and reliving those memories, he reported paranoid ideation but not at a delusional level, he reported hearing voices that did not appear to be true auditory hallucinations, his insight and judgment were fair, he reported suicidal feelings, and he denied any homicidal ideation. *Id.* Weber was diagnosed with major depressive disorder without psychotic symptoms, rule out substance-induced mood disorder, marijuana dependence, rule out PTSD, anxiety not otherwise specified, and a current GAF score of 20.[4] *Id.*

---

[4] A GAF score of 11 to 20 indicates some danger of hurting self or others (*e.g.*, suicide attempts

Weber was hospitalized because he was found to be an imminent risk of harm to himself. *Id.* He was discharged on May 13, 2014, with diagnoses of major depressive disorder, PTSD, and cannabis dependence. (Tr. 265.) Weber was prescribed Trazodone[5] and Cymbalta[6] for his mental impairments, and was instructed to follow-up at the PCRMC clinic. *Id.*

The ALJ stated that later evidence reflects that Weber had a good response to the medications and treatment he received during his hospitalization. (Tr. 18.) She noted that, when Weber presented to nurse practitioner Elaine Briggs for follow-up after his hospitalization in July of 2014, he reported that he was doing well on his medications and denied experiencing any side effects. (Tr. 18, 300.) The ALJ concluded that the longitudinal record supports that Weber's mental condition has "generally improved," although he had some limitations resulting from his mental impairments. (Tr. 18.)

The records of the treatment Weber received after his hospitalization are consistent with the ALJ's finding. Weber presented to Michaela Beezley, PsyD., on May 23, 2014, for follow-up. (Tr. 307.) Weber complained of anxiety, depression, and difficulty sleeping. *Id.* Upon examination, Weber was alert and oriented, cooperative, disheveled, tearful, his mood was depressed, his affect was sad, and his short-term memory was impaired; but his cognitive function, thought process, insight, and judgment were intact. *Id.* Dr. Beezley diagnosed Weber with

---

without clear expectation of death, frequently violent, manic excitement); occasionally fails to maintain minimal personal hygiene (*e.g.*, smears feces); or gross impairment in communication (*e.g.*, largely incoherent or mute). *See DSM IV–TR* at 34.

[5]Trazodone is indicated for the treatment of depression, as well as anxiety and insomnia related to depression. *See* WebMD, http://www.webmd.com/drugs (last visited July 17, 2017).

[6]Cymbalta is indicated for the treatment of depression and anxiety. *See* WebMD, http://www.webmd.com/drugs (last visited July 17, 2017).

depression, insomnia, anxiety, and nightmares associated with PTSD; and referred him to individual therapy. (Tr. 308.)

On June 25, 2014, Weber saw Jennifer J. Gradel, CNP, for a medication follow-up. (Tr. 304.) Weber reported that he was doing well on all of his medications, except that it still took him three to four hours to fall asleep after taking the Trazodone. *Id.* He denied experiencing side effects from his medications. *Id.* Upon examination, he was alert, oriented, cooperative, his cognitive function was intact, he had no auditory or visual hallucinations, no suicidal ideation, and his affect was sad. (Tr. 305.) Ms. Gradel diagnosed him with insomnia, depression, anxiety, and nightmares associated with PTSD. *Id.* She increased Weber's Trazodone for the insomnia, and continued the Cymbalta. *Id.*

Weber saw nurse practitioner Briggs for medication follow-up on July 24, 2014, at which time he reported that his medications were "working fine now." (Tr. 301.) Upon examination, Weber was alert, oriented, his cognitive function was intact, he was cooperative, maintained good eye contact, his judgment and insight were good, he exhibited the full range of mood/affect, he had no auditory or visual hallucinations, his speech was normal and clear, and his thought content was without suicidal ideation or delusions. *Id.* She refilled Weber's prescriptions. (Tr. 301-02.)

In determining Weber's RFC, the ALJ also found that Weber's subjective complaints of disabling symptoms were not credible. *See Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005) (it is clearly established that, before determining a claimant's RFC, the ALJ must first evaluate the claimant's credibility). Most significantly, the ALJ noted that Weber had received no treatment for his mental impairments until his September 2012 disability examination with Dr. Semeyn, despite his alleged onset date of March 18, 2008. (Tr. 17, 229, 233-34.) Although Weber stopped working in 2007, he told Dr. Rosenboom that he had not been working due to his lack of

Page **15** of **19**

transportation and "the economy," rather than any medical impairment.  (Tr. 230-31.)

The ALJ accurately found that Weber's lack of treatment detracted from his credibility. *See Partee v. Astrue*, 638 F.3d 860, 864 (8th Cir. 2011) (recognizing that failure to seek medical treatment for mental illness is a permissible factor in determining that claimant did not suffer from a disabling mental impairment); *Moore v. Astrue*, 572 F.3d 520, 524-25 (8th Cir. 2009) (appropriate for ALJ to consider conservative or minimal treatment in assessing credibility).  The ALJ properly considered that the objective and other medical evidence did not support Weber's subjective complaints.

The ALJ made the following determination regarding Weber's mental RFC:

> Although the claimant's mental condition has improved, it is reasonable to believe that he experiences some degree of difficulty concentrating due to his mental symptoms.  As such, the undersigned finds that he can understand, remember, and carry out simple instructions, consistent with unskilled work, in a job where there are no strict production quotas and the individual would not be subject to the demands of fast-paced production work.  In other words, work is by the shift and not by the hour.  He can perform only simple decision-making related to basic work functions.  He can tolerate only minor, infrequent changes in the workplace. He should avoid concentrated exposure to hazards, such as unprotected heights and being around dangerous, moving machinery.  Because of social anxiety, he can have occasional contact with co-workers and supervisors but no contact with the general public.

(Tr. 18.)

Weber argues that the ALJ should have further developed the record due to the lack of medical evidence in the record regarding his mental limitations.  It is true that the ALJ may order a consultative examination when the evidence as a whole is insufficient to reach a decision.  42 C.F.R. § 416.917.  In fact, the ALJ has an obligation "to develop the record fairly and fully, independent of the claimant's burden to press his case."  *Vossen v. Astrue,* 612 F.3d 1011, 1016 (8th Cir. 2010) (quoting *Snead v. Barnhart,* 360 F.3d 834, 838 (8th Cir. 2004)).  But "the burden

of persuasion to prove disability and demonstrate RFC remains on the claimant." *Id.* Remand is appropriate only if there is some showing that the claimant "was prejudiced or treated unfairly by how the ALJ did or did not develop the record." *Onstad v. Shalala,* 999 F.2d 1232, 1234 (8th Cir. 1993).

Weber relies on *Nevland v. Apfel,* 204 F.3d 853 (8th Cir. 2000) as support for his argument that the ALJ erred in failing to develop the record. In *Nevland,* the Court held that the ALJ failed to fully and fairly develop the record where there was "no *medical* evidence about how [the claimant's] impairments affect his ability to function now" and "the ALJ relied on the opinions of non-treating, non-examining physicians who reviewed the reports of the treating physicians to form an opinion of [the claimant's] RFC." 204 F.3d at 858 (emphasis in original). The Court found that the ALJ should have sought an opinion from the claimant's treating physicians or ordered a consultative examination. *Id.* Due to the lack of substantial evidence supporting the ALJ's RFC determination, the Court reversed and remanded the decision of the ALJ. *Id.*

This case is distinguishable from *Nevland.* The claimant in *Nevland* provided medical evidence that documented his limited functional capabilities. *See Nevland,* 204 F.3d at 854-56. The ALJ in *Nevland* erred in disregarding this evidence and Nevland's testimony about his RFC solely based on the opinions of non-examining sources. *Id.* at 858.

In this case, there is no medical evidence in the record supporting any greater limitations than those found by the ALJ. As previously discussed, despite his allegations of disabling mental impairments since 2008, Weber received no mental health treatment and took no psychotropic medications until he started pursuing disability benefits in 2012.[7] At that time, Dr. Rosenboom found that Weber's mood was anxious and his grooming and personal hygiene were below

---

[7] Weber previously filed an application for benefits in October of 2012, which was denied on December 7, 2012. (Tr. 28.)

Page **17** of **19**

average, but he was an articulate speaker, he developed a good working relationship with the examiner, he was an adequate historian and reliable informant, was alert and attentive, and his memory was not impaired.  (Tr. 231-32.)  Dr. Rosenboom expressed the opinion that Weber did not have a mental disability that prevented him from working.  *Id.*  Similarly, Dr. Semeyn examined Weber in 2012 and also found that he did not have a mental disability that prevented him from engaging in gainful activity.  (Tr. 234.)  Dr. Altomari expressed the opinion in July 2013 that Weber had only mild limitations.  (Tr. 78.)  Weber's hospitalization for suicidal ideation in May 2014 was caused by seizures he experienced from smoking synthetic marijuana.  (Tr. 18, 39.)  At Weber's most recent follow-up appointment from his hospitalization, he was alert, oriented, his cognitive function was intact, he was cooperative, maintained good eye contact, his judgment and insight were good, he exhibited the full range of mood/affect, he had no auditory or visual hallucinations, his speech was normal and clear, and his thought content was without suicidal ideation or delusions.

There was sufficient medical evidence in the record for the ALJ to determine Weber's mental RFC, and Weber has failed to show any prejudice due to the ALJ's failure to order a consultative examination.  The ALJ did not err in relying on the findings of consultative mental health professionals in the absence of any opinions of treating physicians finding greater restrictions.  The objective evidence, consisting of the findings on examination that Weber's thought process, memory, insight, and judgment were normal, supports the ALJ's determination that Weber is capable of performing a limited range of unskilled work.

The ALJ also considered Weber's own statements when determining his RFC.  For example, Weber indicated to medical providers and to the ALJ that his medications were effective at controlling his symptoms and resulted in no side effects.  Weber explained at the administrative

hearing that his medications "calmed everything down to a tolerable level." (Tr. 58.) The ALJ also credited Weber's testimony that he had difficulty being around people (Tr. 34, 46, 58) when limiting his contact with co-workers, supervisors, and the general public, and restricting him to infrequent work changes.

Thus, substantial evidence on the record as a whole supports the ALJ's mental RFC determination. While Weber argues that an inconsistent position may be drawn from the evidence, the Court must affirm the ALJ's decision if it is supported by substantial evidence. *Goff v. Barnhart,* 421 F.3d 785, 789 (8th Cir. 2005).

After determining Weber's RFC, the ALJ found that he was unable to perform any past relevant work. (Tr. 19.) The ALJ properly relied on the testimony of a vocational expert to find that Weber could perform other work existing in significant numbers in the national economy with his RFC. (Tr. 20.) *See Robson v. Astrue*, 526 F.3d 389, 392 (8th Cir. 2008) (holding that a vocational expert's testimony is substantial evidence when it is based on an accurately phrased hypothetical capturing the concrete consequences of a claimant's limitations). Thus, the ALJ's decision finding Weber not disabled is supported by substantial evidence.

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

/s/ Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 21st day of July, 2017.